| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 12-CR-0044-CVE** |
| | ) | **(14-CV-0596-CVE-FHM)** |
| **DEANDRE ANTONIO HOPKINS,** | ) | |
| **a/k/a "Wet"** | ) | |
| **a/k/a "C-Wet"** | ) | |
| **a/k/a "Sman"** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court are defendant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Dkt. # 62) and motion for production of records/transcripts (Dkt. # 63). Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

As an initial matter, defendant has filed a motion for production of records/transcripts (Dkt. # 63), seeking copies of all records and transcripts related to his case, as well as an order requiring defendant's former counsel to forward his case files to him. Dkt. # 63, at 1-3. An indigent defendant is entitled to have the government pay the fees for a copy of his transcripts in a § 2255 proceeding only if he demonstrates that his suit is not frivolous and that the transcripts are needed to decide the issues presented by the suit. 28 U.S.C. § 753(f); see also Ruark v. Gunter, 958 F.2d 318, 318 (10th Cir. 1992); Hines v. Baker, 422 F.2d 1002, 1006 n.9 (10th Cir. 1970). The Tenth Circuit Court of Appeals has construed § 753(f) as requiring that a defendant show "particularized need" for the

transcripts even if the transcripts are existing. <u>Sistrunk v. United States</u>, 992 F.2d 258, 259 (10th Cir. 1993). Mere "naked allegations" that a defendant is entitled to relief under § 2255 are insufficient under § 753(f). <u>Id.</u> (citing <u>United States v. MacCollom</u>, 426 U.S. 317, 326-27 (1976) (plurality)). The claims in defendant's § 2255 motion are either already supported by factual averments and citation to the record or are brief recitations of law coupled with defendant's assertion that he will amend his motion to include facts after receiving the requested transcripts. As to the first group of claims, there is no "particularized need" for the transcripts--indeed, defendant cites to transcripts in some claims. <u>See</u> Dkt. # 62, at 21. As to the second group, defendant's "naked allegations" are insufficient under § 753(f). Defendant has thus failed to meet the requirements for the provision of transcripts free of charge. Defendant's motion for production of records/transcripts (Dkt. # 63) is denied.[1]

## I.

On February 10, 2012, a grand jury returned an indictment against defendant, and he was subsequently arrested. Dkt. # 2. At defendant's initial appearance, Timothy Gifford was appointed to represent defendant. Dkt. # 10. In a superseding indictment, returned on May 7, 2012, a grand jury charged defendant with robbery involving controlled substances (count one), in violation of 18 U.S.C. § 2118(a), (c)(1), and with carrying and brandishing a firearm during and in relation to a crime of violence (count two), in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Defendant filed no pretrial motions, and he proceeded to trial on May 29, 2012. Dkt. # 29.

---

[1]     As part of his motion for production of records/transcripts, defendant requests that the Court order defendant's former trial and appellate counsel to show cause why they should not be compelled to deliver defendant's case files to him. Dkt. # 63, at 2-3. However, defendant does not state that he has previously requested his files. The Court instructs defendant to request his files from his former counsel.

At trial, the government presented ten witnesses. According to the testimony of Grasiela Galvan, at approximately 9 a.m. on May 7, 2010, armed masked men entered the T. Roy Barnes Pharmacy in Tulsa, Oklahoma. Dkt. # 38, at 25-26. The men ordered Galvan, a pharmacy employee, to give them the money in the cash register and to retrieve from the shelves a variety of specific controlled substances, including Lortab and OxyContin. Id. at 29-31. Several of the men were armed, and one man used his firearm to prod Galvan as she was retrieving the medications. Id. at 32. Galvan saw that the men had their faces almost completely covered, and all wore long sleeved shirts or hooded sweatshirts, as well as gloves. Id. at 32-33. Susan Greek, the pharmacist and pharmacy manager, was also present during the robbery. She described the pharmacy's surveillance system, after which the jury was shown a video of the robbery from the pharmacy's surveillance cameras. Id. at 47-48, 60. Greek told of how the robbers, using her keys, fled the pharmacy in her vehicle. Id. at 57. When recalled as a witness, Greek confirmed that the pharmacy was registered with the Drug Enforcement Administration at the time of the robbery, and that the value of the stolen medications was $4,200.89. Id. at 100, 102. She also described how, after police officers discovered her stolen vehicle in the parking lot of a nearby apartment complex, she found a plastic bag filled with what appeared to be the robbers' face coverings in the vehicle's back seat. Id. at 103-105. In addition to Galvan and Greek, the two eyewitnesses to the robbery, the government presented three other civilian witnesses, including Ruby Reynolds, whose vehicle was also stolen by the robbers, and Ted Warren and Carl Littledave, maintenance workers at the apartment complex where Greek's vehicle was found. Id. at 66, 78, 83.

The government presented five law enforcement witnesses. Tulsa Police Department (TPD) Officer Jeff Olomon responded to the scene of the robbery, and he interviewed Galvan and Greek.

Id. at 73-74. Officer Olomon also spoke with Warren and Littledave after Greek's vehicle was discovered. Id. at 76. TPD Sergeant David Walker described overseeing the search of the apartment complex where Greek's vehicle was found. Id. at 90. In the complex's common trash bins, officers recovered a hooded sweatshirt and a pair of brown gloves, both of which were later admitted into evidence. Id. at 92. TPD Detective Robert Hickey, crime scene investigator, testified as to how crime scenes and vehicles are processed for fingerprints and DNA evidence. Id. at 108-110. He then described how he processed the pharmacy and the two stolen vehicles, including preserving two fingerprints and several possible sources of DNA. Id. at 112.

Extensive testimony came from Federal Bureau of Investigation Special Agent Charlie L. Jones, the case agent for the investigation. Dkt. # 39, at 4. Special Agent Jones testified to his experience with robbery investigations, including offenders' use of stolen vehicles and masks. Id. at 5, 7. He next recounted obtaining and executing a warrant for defendant's DNA. Id. at 11-12. Finally, he described his extensive review of the surveillance video, including still photographs extracted from that video. Id. at 14-15. Using the video and photographs, Special Agent Jones assessed the height, weight, and complexion of the robbers, and he "strongly believed" that one of the robbers matched the height, weight, and complexion of defendant. Id. at 15.

The final law enforcement witness was Jon Wilson, operations manager and DNA analyst of the TPD forensics laboratory. Id. at 22. Wilson testified as to his own qualifications and those of the laboratory for DNA analysis, id. at 23-26, before describing how he tested the evidence, including the face coverings that Greek discovered in her vehicle. Id. at 27-28. On one of the face coverings, Wilson found DNA from a "major contributor" and a "minor contributor." Id. at 29. Although he could determine no useful information about the minor contributor, he determined that

defendant could not be excluded as the major contributor. Id. at 30-31. Moreover, the likelihood of selecting an individual at random who could not be excluded as the major contributor was "1 in 26 quadrillion U.S. Caucasians, one in 1.9 quadrillion African-Americans, or 1 in 43 quadrillion southwestern Hispanics." Id. at 31.

Two defense witnesses, defendant's grandmother Celestia Hopkins (Ms. Hopkins) and his aunt Lisa Pannell, testified as to defendant's likely whereabouts on the morning of the robbery. According to both witnesses, Pannell would bring her daughter, and occasionally her nephew, to Ms. Hopkins's house each weekday morning so that defendant, who lived with Ms. Hopkins, could take them to school. Id. at 39-40, 49-50. Pannell testified that the children needed to be at school at approximately 8 a.m., and that defendant regularly got the children to school on time. Id. at 56-57. Both women also described a burglary of Ms. Hopkins's home that occurred in the months preceding the robbery. Id. at 41, 52. Among the items stolen were several articles of defendant's clothing. Id. at 42.

Defendant did not testify at trial, but the Court elicited responses from him on two occasions. The first, prior to the entrance of the prospective jurors, concerned whether the government had made any plea offers to defendant:

> THE COURT: . . . Oh, before the jury panel comes in, on the record, I want to make a record under Frye and Lafler. Were there any plea offers made to this defendant?
>
> MR. GIFFORD: No, Your Honor.
>
> THE COURT: You don't know?
>
> MR. FRIES: Well, I do, Your Honor. In that regard I believe at the time of the initial appearance the defendant was offered the proposition that if he wanted to come in, cooperate with the government, and conduct a Rule 11 with the government, that the United States would be willing to file some type of 5K motion, depending upon his cooperation.

THE COURT: To whom was that communicated?

MR. FRIES: I believe it was to counsel.

MR. GIFFORD: I can tell you after the arraignment was over, I believe Ms. McCormick said something to the effect of the soon- -- the faster -- "If he wants to come in, the faster he does it, the better for him." I think that was --

THE COURT: Okay. And did you talk to --

MR. GIFFORD: -- about the extent of our --

THE COURT: Yeah. And did you convey that to the defendant?

MR. GIFFORD: Yes, Your Honor.

THE COURT: And did you ask Mr. Hopkins if he wanted to go in and cooperate with the United States?

MR. GIFFORD: Oh, yes. Yes.

THE COURT: Okay. And Mr. Hopkins, you'll confirm that you made a decision not to do that; correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Thank you very much.

Dkt. # 38, at 11-12. The second colloquy came after the testimony of Ms. Hopkins and Pannell, when the Court inquired as to whether defendant would testify:

THE COURT: Thank you. Please be seated. All right. There's two matters I would like to take up. First, Mr. Hopkins, do you mind standing up with your lawyer. Okay. Mr. Hopkins, as you know, under the Constitution you have the right to remain silent, which means you have a right not to testify. On the other hand, you have the right to testify if you want to. Have you discussed that decision with your attorney?

THE DEFENDANT: Yes.

THE COURT: And have you made your own decision as to what you want to do?

THE DEFENDANT: Yes.

THE COURT: Do you want to testify or not testify?

THE DEFENDANT: Not testify.

Dkt. # 39, at 61-62.

Following the close of the evidence but prior to closing arguments, the Court instructed the jury as to the applicable law. Id. at 69. After closing arguments, the jury deliberated and returned a verdict of guilty as to count one and not guilty as to count two. Dkt. # 36. On September 13, 2012, the Court sentenced defendant to a term of 144 months, to run concurrently with any punishment in his related state court proceedings. Dkt. # 40. As part of sentencing, the Court adopted the pre-sentence report (PSR) as its findings of fact. Dkt. # 48, at 3. The PSR listed defendant's base offense level as 20, but it arrived at a total offense level of 30 based on enhancements under United States Sentencing Guidelines (USSG) §§ 2B3.1(a), (b)(2)(B), (b)(4)(B), and (b)(5).

Defendant appealed his conviction to the Tenth Circuit Court of Appeals. Dkt. # 43. Gifford was allowed to withdraw as defense counsel, and the Tenth Circuit appointed Carolyn Merritt as appellate counsel. Dkt. # 46. On June 17, 2013, the Tenth Circuit affirmed defendant's conviction, concluding under plain error review that the Court's decision to admit Special Agent Jones's identification testimony did not prejudice defendant because significant other evidence linked him to the robbery. Dkt. # 54, at 5. On the same day that the Tenth Circuit issued its decision, the Supreme Court decided Alleyne v. United States, 133 S. Ct. 2151 (2013). Defendant filed a motion to stay issuance of the mandate, withdraw the decision, and reopen the appeal to address Alleyne, and the Tenth Circuit agreed in part: it stayed issuance of the mandate and permitted the parties to file supplemental briefs based on Alleyne, but it took under advisement defendant's request to withdraw its previous decision. Order, United States v. Hopkins, No. 12-5155 (10th Cir. June 27,

2013). On July 26, 2013, the Tenth Circuit determined that <u>Alleyne</u> did not apply to defendant's case, and by written order it declined to either vacate defendant's sentence or withdraw its previous decision. Order Denying Motion to Withdraw Previously Issued Order and Judgment, <u>United States v. Hopkins</u>, No. 12-5155 (10th Cir. July 26, 2013).

On October 6, 2014, defendant filed his <u>pro se</u> motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Dkt. # 62. He asserts four grounds for relief, including ineffective assistance of counsel (grounds one and three), actual innocence (ground two), and failure to disclose exculpatory evidence (ground four). <u>Id.</u> at 4-8. The Court ordered the government to respond, Dkt. # 68, and the government did so. Dkt. # 77. Defendant has filed a reply. Dkt. # 85.

## II.

Before addressing the merits of defendant's motion, the government contends that the motion should be dismissed in its entirety because it is untimely. Dkt. # 77, at 14. The timeliness of defendant's motion is governed by 28 U.S.C. § 2255(f), which provides that "[a] 1-year period of limitation shall apply to a motion under this section." The statutory limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4). The Court previously issued a show cause order, requiring defendant to demonstrate the timeliness of his § 2255 motion. Dkt. # 65. Defendant answered that his motion was

timely under § 2255(f)(1) because he filed his motion within one year of the date that the judgment of conviction became final; defendant did not invoke any other subpart of § 2255(f). Dkt. # 67.

For any defendant who "takes an unsuccessful direct appeal from a judgment of conviction[] but does not next petition for a writ of certiorari," the judgment of conviction "becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." Clay v. United States, 537 U.S. 522, 524-25 (2003). By Supreme Court Rule, a petition for writ of certiorari to review an appellate court's judgment must be filed within ninety days of the entry of judgment, without regard for the issuance of the appellate court's mandate. SUP. CT. R. 13(3); see also United States v. Burch, 202 F.3d 1274, 1279 (10th Cir. 2000). However, "if a petition for rehearing is timely filed in the lower court . . . or if the lower court . . . sua sponte considers rehearing, the time to file the petition for a writ of certiorari . . . runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment." SUP. CT. R. 13(3).

Here, the Tenth Circuit affirmed defendant's conviction on June 17, 2013. Dkt. # 54; see also United States v. Hopkins, 528 F. App'x 782 (10th Cir. 2013). On the same day, the Supreme Court decided Alleyne v. United States, 133 S. Ct. 2151 (2013). Defendant requested the Tenth Circuit to stay the issuance of the mandate and withdraw its decision based on Alleyne; the Tenth Circuit granted a stay to permit supplemental briefing regarding Alleyne, but took under advisement defendant's request for withdrawal of its earlier decision. Order, United States v. Hopkins, No. 12-5155 (10th Cir. June 27, 2013). On July 26, 2013, the Tenth Circuit in a written order declined to vacate defendant's sentence or withdraw its prior decision, concluding that defendant's case was distinguishable from Alleyne. Order Denying Motion to Withdraw Previously Issued Order and

Judgment, <u>United States v. Hopkins</u>, No. 12-5155 (10th Cir. July 26, 2013). Defendant did not file a petition for writ of certiorari to the Supreme Court.

The government argues that the one-year limitations period began to run ninety days after the Tenth Circuit issued its decision on June 17, 2013. Dkt. # 77, at 14. If so, the limitations period ran from September 15, 2013 to September 15, 2014, making defendant's § 2255 motion, filed on October 6, 2014, untimely. <u>See</u> Dkt. # 62. Defendant does not address this argument in his reply brief.[2] The government states without elaboration that defendant's motion was not a "petition for rehearing," although it does not address whether the Tenth Circuit's decision to stay issuance of its mandate and permit supplemental briefing on <u>Alleyne</u> would qualify as a "<u>sua sponte</u> consider[ation of] rehearing."[3] Dkt. # 77, at 16-17. If the Tenth Circuit's post-decision actions may be considered a rehearing, then the one year limitations period began ninety days after the Tenth Circuit issued its July 26, 2013 order denying defendant's motion. Under those circumstances, the one-year limitations period began to run on October 24, 2013 and expired October 24, 2014, approximately three weeks after defendant filed his § 2255 motion.

---

[2]     In his reply, defendant merely quotes Fed. R. App. P. 41(d)(1) and then states that it demonstrates that his petition was timely. However, Rule 41(d)(1), which provides that "[t]he timely filing of a . . . motion for stay of mandate[] stays the mandate until disposition of the . . . motion, unless the court orders otherwise," is inapposite. The issuance of the mandate is irrelevant to the timeliness of a petition for writ of certiorari under Supreme Court Rule 13(3), making it likewise irrelevant to the timeliness of a motion under § 2255. <u>See</u> Sup. Ct. R. 13(3).

[3]     The Court notes that, although not included in defendant's reply brief, the argument that defendant's motion to stay tolled the time to file a petition for a writ of certiorari may be inferred from defendant's answer to the Court's show cause order. <u>See</u> Dkt. # 67, at 1 (contending that the Tenth Circuit's order allowing supplemental briefing "had the effective [sic] of extending the date that the criminal judgment became final").

It is unclear whether defendant's motion to stay the issuance of the mandate and withdraw the decision would qualify as a petition for panel rehearing under Fed. R. App. P. 40. A petition for panel rehearing "must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition." FED. R. APP. P. 40(a)(2). If a petition for panel rehearing is granted, the court may "make a final disposition of the case without reargument; restore the case to the calendar for reargument or resubmission; or issue any other appropriate order." FED. R. APP. P. 40(a)(4). Defendant's motion did not argue that the Tenth Circuit panel "overlooked or misapprehended" existing law in its decision; rather, it argued that newly-decided law required the Tenth Circuit to withdraw its decision. However, the result of the motion could be considered a panel rehearing, as the Tenth Circuit allowed supplemental briefing and issued a post-decision order addressing defendant's legal arguments on their merits. See Order Denying Motion to Withdraw Previously Issued Order and Judgment, United States v. Hopkins, No. 12-5155 (10th Cir. July 26, 2013). Additionally, the Tenth Circuit's actions in response to defendant's motion--staying issuance of the mandate and ordering supplemental briefing on Alleyne--are the type of "other appropriate order" that could be issued in response to a petition for rehearing, especially were the petition one for a limited rehearing. For these same reasons, it is unclear whether the Tenth Circuit's response to defendant's motion, even if that motion would not be considered a motion for panel rehearing under Fed. R. App. P. 40, would be considered a "sua sponte consider[ation of] rehearing."

Given the uncertainty regarding whether the Tenth Circuit would regard the post-decision events as coming under Fed. R. App. P. 40, the Court declines to find that the one-year limitations period began to run when the Tenth Circuit issued its decision on June 17, 2003. The prudent course

is to assume that the Tenth Circuit would consider the post-decision events in this case as being in effect a rehearing, delaying the start of the limitations period to October 24, 2013. Under that assumption, defendant's § 2255 motion is timely, and the Court will proceed to the merits of defendant's motion.

## III.

Defendant asserts, as his first and third grounds for relief, that his trial and appellate counsel were constitutionally ineffective. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right to counsel "exists, and is needed, in order to protect the fundamental right to a fair trial." Strickland v. Washington, 466 U.S. 668, 684 (1984). The Supreme Court has long held that "the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (collecting cases). This right can be violated in two ways: the government may violate the right if it interferes with defense counsel's ability to act independently; or defense counsel may violate the right "simply by failing to render 'adequate legal assistance.'" Strickland, 466 U.S. at 686 (quoting Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). Defendant's arguments relate only to the latter type of violation.

To establish ineffective assistance of defense counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Id. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this

determination, a court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential: "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, defendant must show that counsel's deficient performance prejudiced him to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). The two prongs of the Strickland test need not be addressed in order. Smith v. Robbins, 528 U.S. 259, 286 n.14 (2000).

As part of his argument, defendant presents fifteen separate claims of ineffective assistance relating to the performance of both his appellate counsel, Merritt, and his trial counsel, Gifford. Defendant argues that Merritt was ineffective because she did not file a petition for writ of certiorari a and because she did not argue on appeal issues that were preserved at trial. Defendant asserts that Gifford was ineffective because: he failed to identify improper double counting in the PSR; he failed to prepare the case properly; he failed to object to prejudicial evidence and testimony; he failed to advise defendant of defendant's right to testify; he failed to object to prosecutorial misconduct; he failed to request or object to the jury instructions; he failed to object to adverse judicial rulings; he failed to preserve conflict of interest issues; he failed to convey a plea offer to defendant; he failed to challenge the testimony of Special Agent Jones; he failed to object to the admission of DNA evidence or retain a DNA expert; he failed to object to the government's proof regarding interstate

commerce; and he failed to present a complete defense. See Dkt. # 62. The Court addresses each argument in turn.

### A. Defendant's Arguments Concerning Merritt

#### 1. Failure to File a Petition for Writ of Certiorari

Defendant argues that Merritt was constitutionally ineffective because she failed to file a petition for writ of certiorari to the Supreme Court. Dkt. # 62, at 18. While defendant does have the right to assistance of counsel in his defense, "there is no constitutional right to effective assistance of counsel relating to requests for certiorari review in the United States Supreme Court." United States v. Rodriguez, 768 F.3d 1270, 1277-78 (10th Cir. 2014). "Since [defendant] had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely." Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (per curiam); see also Rodriguez, 768 F.3d at 1277-78; United States v. Thomas, 33 F. App'x 446, 448 (10th Cir. 2002).[4]

Defendant contends that the Supreme Court's decision in Wilkins v. United States, 441 U.S. 468, 470 (1979) (per curiam), justifies a different result here. In Wilkins, the defendant instructed his court-appointed counsel to timely file a petition for writ of certiorari with the Supreme Court, and counsel promised to do so. Wilkins, 441 U.S. at 468. In spite of the promise, counsel did not file a petition for writ of certiorari, and the time to do so expired. Id. The Supreme Court determined that individuals like the defendant in Wilkins should present the issue to the relevant court of appeals through a motion for appointment of counsel. Id. at 469. Upon that motion, the court of appeals

---

[4]    Unpublished decisions are not precedential, but they may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

could, if the situation warrants, "vacate[] its judgment . . . and enter[] a new one, so that th[e] petitioner, with the assistance of counsel, could file a timely petition for certiorari." Id. As the remedy prescribed by Wilkins requires consideration and action by the Tenth Circuit, it is beyond the power of this Court to grant. See United States v. Hill, No. CR-05-111-L, CIV-08-1121-L, 2009 WL 1531533, at *4 n.7 (W.D. Okla. June 1, 2009).

Further, Wilkins is factually distinguishable from defendant's case. In Wilkins, the defendant asked his counsel to file a petition for writ of certiorari within the filing period, and counsel promised to do so on petitioner's behalf. Id. at 468. Here, defendant alleges that he sent Merritt a letter on July 14, 2013--three days before the Tenth Circuit issued its decision on his direct appeal-- that specifically requested that she file a petition for writ of certiorari. Dkt. # 62, at 18. Merritt's affidavit states that she contacted defendant by letter in June, July, and August 2013 regarding the Tenth Circuit's decision and Alleyne, but she did not receive a letter from defendant at that time. Dkt. # 77-1, at 2. After the Tenth Circuit panel decided that Alleyne did not apply to defendant's case, Merritt "determined that a petition for certiorari based upon Alleyne was not viable and would be unsuccessful; however, [she does not] believe [she] notified [defendant] of [her] decision not to seek certiorari." Id. at 3. Merritt avers that she received defendant's letter asking her to file a petition for writ of certiorari more than a year after her last contact with defendant. Id. She notes that the envelope containing defendant's letter was postmarked September 12, 2014 but that the letter inside the envelope was backdated. Id. Thus, there is substantial disagreement as to whether defendant asked Merritt to file a petition for writ of certiorari prior to the filing deadline, which was not present

in <u>Wilkins</u>.[5] <u>See</u> <u>Fernandez</u>, 397 F. App'x at 440 (O'Brien, J., concurring). In addition, there is no evidence that Merritt promised defendant that she would file a petition for writ of certiorari, further distinguishing defendant's case from <u>Wilkins</u>. <u>See</u> <u>Brown v. United States</u>, Criminal No. 02-101 (JRT/FLN), 2006 WL 3626983, at *2 (D. Minn. Dec. 12, 2006).

Additionally, even if defendant had the right to the effective representation of counsel in filing a petition for writ of certiorari with the Supreme Court, which he does not, he must have been prejudiced by the denial of that right in order to succeed under <u>Strickland</u>. <u>See</u> <u>Steele v. United States</u>, 518 F.3d 986, 988 (8th Cir. 2008). This would require showing "not only that [defendant] would have succeeded in obtaining a writ of certiorari if counsel had filed a petition, but also a reasonable probability that [he] would have obtained relief as to [his] sentence." <u>Id.</u> at 988-89 (citing <u>Strickland</u>, 466 U.S. at 694). Defendant presents absolutely no argument that a petition for writ of certiorari on the issues present in his direct appeal would have succeeded, and such a result seems improbable based on the Tenth Circuit's decision. Defendant therefore has not shown "a reasonable probability that [he] would have obtained relief."

Pursuant to the Supreme Court's decision in <u>Torna</u>, Merritt's performance in not filing a petition for writ of certiorari could not be constitutionally deficient. <u>Torna</u>, 455 U.S. at 587-88. Defendant's reliance on <u>Wilkins</u> is unavailing, both because this Court cannot grant relief under <u>Wilkins</u> and because defendant's case is factually distinguishable from <u>Wilkins</u>. Moreover, even if defendant was entitled to Merritt's assistance in preparing a petition for writ of certiorari, defendant

---

[5]    Merritt states that she included a copy of the envelope bearing the September 12, 2014 postmark with her affidavit, but that envelope is not filed of record.

has not shown that any failure resulted in prejudice under <u>Strickland</u>. As neither prong of <u>Strickland</u> is met, this claim fails.

## 2. Failure to Argue on Appeal Issues Preserved at Trial

Defendant contends that he was denied the effective assistance of appellate counsel when Merritt "failed to brief and argue issues on appeal that were properly preserved at [the] trial level."[6] Dkt. # 62, at 42. Appointed counsel need not raise every non-frivolous issue on appeal if, as a matter of professional judgment, counsel feels those issues should not be raised. <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983); <u>Tapia v. Tansy</u>, 926 F.2d 1554, 1564 (10th Cir. 1991). The Tenth Circuit has stated that courts should "look to the merits of the omitted issue" to determine whether appellate counsel's decision not to include the issue in an appeal denied the right to effective assistance of counsel. <u>Cargle v. Mullin</u>, 317 F.3d 1196, 1202 (10th Cir. 2003) (quoting <u>Neill v. Gibson</u>, 278 F.3d 1044, 1057 (10th Cir. 2001)). Here, defendant fails to identify what issues appellate counsel should have, but did not, include in defendant's appeal to the Tenth Circuit. Dkt. # 62, at 42. Thus, defendant has failed to demonstrate that Merritt's performance in assessing and then briefing issues on appeal was deficient to the point that she "was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. As defendant has not met the first prong of the <u>Strickland</u> test, Merritt was not constitutionally ineffective in assessing and then briefing issues for defendant's direct appeal.

---

[6]     Unlike defendant's other claims of ineffective assistance of counsel, which were part of defendant's first asserted ground for relief under 28 U.S.C. § 2255, this claim comprises the entirety of defendant's third asserted ground for relief.

B. Defendant's Arguments Against Gifford

1. Failure to Identify Double Counting in the PSR

Defendant argues that Gifford was constitutionally ineffective because he did not discover or object to the PSR's inclusion of two separate enhancements related to defendant's use of a firearm. Dkt. # 62, at 21. Specifically, the PSR included a five-level enhancement under USSG § 2B3.1(b)(2)(B) for "brandish[ing] a firearm and plac[ing] it at the victim's side" and a separate two-level enhancement under USSG § 2B3.1(b)(4)(B) for "brandish[ing] firearms while ordering victims to lay on the ground at gunpoint." Gifford did not object to the PSR before or at sentencing. Dkt. # 48, at 2.

Defendant asserts that the inclusion of both enhancements constitutes impermissible double counting, which "occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes." United States v. Fisher, 132 F.3d 1327, 1329 (10th Cir. 1997) (quoting United States v. Blake, 59 F.3d 138, 140 (10th Cir. 1995)). The Tenth Circuit addressed this issue directly in United States v. Rucker, 178 F.3d 1369, 1370 (10th Cir. 1999), where the defendant received enhancements under § 2B3.1(b)(2)(B) and § 2B3.1(b)(4)(B) because he ordered clerks and customers at the post office he was robbing to lie on the floor while pointing a firearm at them. Based on its evaluation of the rationale behind double counting and the enhancements at issue, the Tenth Circuit concluded that the two enhancements "do not necessarily overlap, are not indistinct, and do not serve identical purposes." Id. at 1373 (emphasis in original). Thus, there was no impermissible double counting in applying each enhancement. Id.

As in Rucker, the application of both enhancements to defendant stemmed from defendant's use of a firearm during a robbery to order victims to lie on the ground. Thus, following Rucker, there was no impermissible double counting in the application of the enhancements. As there was no error in the application of the sentencing enhancements, Gifford did not render deficient performance by failing to object to the PSR, and so this claim fails on the first prong of the Strickland analysis.

### 2. Failure to Prepare the Case Properly

Defendant contends that Gifford failed to investigate the case and prepare a meaningful defense, specifically asserting that he failed to interview all witnesses and examine the physical evidence. Dkt. # 62, at 26. However, he fails to provide any allegations as to the witnesses and evidence that Gifford allegedly failed to investigate as part of preparing a defense. Although the Court must liberally construe defendant's pro se pleadings, see Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), the Court is "not required to fashion [d]efendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994); see also Bromley v. Phillips, 528 F. App'x 956, 959 (10th Cir. 2013) ("Bromley does not specifically explain how these alleged failures caused him prejudice and thus does not state an ineffective assistance claim."); United States v. Fennell, 553 F. Supp. 2d 1303, 1308 (N.D. Okla. 2008) ("Fennell's claims are merely conclusory allegations without any factual support, which are insufficient to support an ineffective assistance of counsel claim."). The failure to provide sufficient support for his argument is itself sufficient reason to find that defendant has not shown ineffective assistance of counsel as to this claim. Fisher, 38 F.3d at 1147.

Even if the Court were to consider the merits of this claim, it would not meet the first prong of Strickland. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Strickland, 466 U.S. at 687-88. Defendant has presented no evidence or argument to rebut the presumption as it applies to Gifford's preparation of a defense, and the available evidence shows that Gifford did prepare a meaningful, if ultimately unsuccessful, defense to count one of the superseding indictment. In his affidavit, Gifford states that he "reviewed all discovery material, visited with [defendant] in jail to discuss his case and any possible defenses, met with his family members, [and] interviewed family members and called them at trial to testify in furtherance of [defendant's] alibi defense." Dkt. # 77-2, at 2. He further notes that he was able to present an alibi defense even though defendant offered the details of that alibi only a few days before trial. Id.; see also Dkt. # 38, at 9 (denying the government's motion in limine regarding defendant's alibi witnesses). The trial transcript shows that two witnesses testified on defendant's behalf, and the government addressed these witnesses' testimony extensively at closing. See Dkt. # 39, at 38-59, 76-78. Furthermore, defendant completely ignores that Gifford's defense was successful as to count two of the superseding indictment. Thus, Gifford's performance in preparing a defense was not constitutionally defective.

### 3. Failure to Object to Prejudicial Evidence and Testimony

Defendant asserts that Gifford was ineffective because he failed to object to the "unduly prejudicial and unlawful evidence and testimony" offered at trial. Dkt. # 62. As with his previous argument, defendant fails to present any specific evidence or testimony to which Gifford should have objected. As a result of defendant's failure to present more than conclusory allegations, without supporting factual averments, see Fisher, 38 F.3d at 1147, the Court cannot find either that Gifford's

failure to object to unspecified evidence and testimony was unreasonably deficient or that any deficiency was prejudicial. Id.; see also Jelani v. Province, No. 09-CV-0343-CVE-FHM, 2011 WL 282408, at *7 (N.D. Okla. Jan. 26, 2011).

#### 4. Failure to Advise Defendant of the Right to Testify

Defendant argues that Gifford failed to advise defendant of his right to testify in his own defense and then refused to call defendant as a witness despite his express desire to testify. Dkt. # 62, at 27. "[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." Rock v. Arkansas, 482 U.S. 44, 49 (1987). "The decision whether to testify lies squarely with the defendant; it is not counsel's decision . . . . [C]ounsel lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy." Cannon v. Mullin, 383 F.3d 1152, 1171 (10th Cir. 2004) (citing Jones v. Barnes, 463 U.S. 745, 751 (1983); United States v. Janoe, 720 F.2d 1156, 1161, 1161 n.10 (10th Cir. 1983)).

"[T]here is no general requirement under federal law that a trial court inquire into a defendant's decision whether to testify . . . ." Turley v. Estep, 375 F. App'x 867, 870 (10th Cir. 2010) (citing Janoe, 720 F.2d at 1161)). However, in this case the Court did conduct a colloquy with defendant regarding his decision not to testify, and that colloquy contradicts defendant's allegations:

> THE COURT: Thank you. Please be seated. All right. There's two matters I would like to take up. First, Mr. Hopkins, do you mind standing up with your lawyer. Okay. Mr. Hopkins, as you know, under the Constitution you have the right to remain silent, which means you have a right not to testify. On the other hand, you have the right to testify if you want to. Have you discussed that decision with your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And have you made your own decision as to what you want to do?

THE DEFENDANT: Yes.

THE COURT: Do you want to testify or not testify?

THE DEFENDANT: Not testify.

Dkt. # 39, at 180-181. The Supreme Court has held that, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Defendant's in-court statements weigh strongly against any assertion that he did not know or could not exercise his right to testify. Also weighing against defendant's allegations is Gifford's affidavit, wherein Gifford states that he and defendant "had several conversations about [defendant's] right to testify and [defendant] was adamant every time that he did not want to testify." Dkt. # 77-2, at 2. Gifford notes that he "particularly remember[s] this because I told him I thought it might appear odd if he was offering an alibi defense but was unwilling to take the stand to testify as to where he was and what he was doing at the time the crime was committed." Id. Defendant's claim that he was not informed of his right to testify and that Gifford refused to allow him to testify is controverted by the record and is "wholly incredible." Blackledge, 431 U.S. at 74. Accordingly, defendant has failed to overcome the strong presumption that his declarations to the Court regarding his decision not to testify were truthful, and so this claim fails. See Kidwell v. Martin, No. 08-CV-0596-CVE-FHM, 2012 WL 707040, at *10 (N.D. Okla. March 5, 2012).

### 5. Failure to Object to Prosecutorial Misconduct

Defendant next argues that Gifford was ineffective for failing to object to prosecutorial misconduct, and he points specifically to the government's closing argument as being used "to

confue the jury as to the applicable laws, [and to] disparge [sic] the [defendant] and his . . . lack of any defense." Dkt. # 62, at 28. Defendant also asserts that the government argued that he was guilty by association based on gang affiliation and that it shifted the burden of proof to defendant. Id.

The Court has reviewed the record, including the government's opening statement and closing argument, and finds that defendant's assertions are not supported. The government's opening statement merely discussed the evidence to be presented, and it mentioned defendant only in the context of the DNA evidence. See Dkt. # 38, at 17-21. The government's closing argument again discussed the evidence, with particular emphasis on the DNA evidence and the credibility of defendant's alibi witnesses. See Dkt. # 39, at 189-97, 203-05. While the government's closing argument included references to the applicable law, those references were mere restatements of the jury instructions that the Court had previously read. See id. at 190, 193-94. The government did not disparage defendant, and the government's closing argument addressed defendant's alibi defense in detail, treating it seriously. See id. at 195-97. A search of the trial transcripts reveals no mention of the word 'gang' or of any specific gang during the trial, including in the government's closing argument. Finally, the Court instructed the jury, both during jury instructions and just before closing arguments, that the burden of proof is on the government, and the government's closing argument did not contradict this instruction. Dkt. # 34, at 4-5; Dkt. # 39, at 70.

As the Court finds no prosecutorial misconduct either in the government's closing argument or through improper attempts to create guilt by association or to shift the burden the burden of proof, defendant has failed to show any deficiency in Gifford's performance as it relates to prosecutorial misconduct. Thus, Gifford was not constitutionally ineffective under Strickland.

<u>6. Failure to Request or Object to Jury Instructions</u>

Defendant contends that Gifford was ineffective for failing to object to specific jury instructions on burden shifting, reasonable doubt, accomplice or group liability, and the jurisdictional element of 18 U.S.C. § 2118(a). Dkt. # 62, at 29. Relatedly, he argues that Gifford "should have requested a jury instruction that charged the jury to find [defendant] guilty only if [defendant's] actions knowingly affected commerce as an element of that offense." <u>Id.</u> (citing <u>United States v. Du Bo</u>, 186 F.3d 1177 (9th Cir. 1999)). The Court's instruction on the burden of proof and reasonable doubt was a recitation of the Tenth Circuit's pattern instruction. <u>Compare</u> Dkt. # 34, at 4-5, <u>with</u> TENTH CIRCUIT PATTERN JURY INSTRUCTIONS -- CRIMINAL § 1.05 (West 2011). Thus, Gifford could not have been deficient under <u>Strickland</u> by not objecting to this instruction. The jury instructions did not include an instruction as to accomplice or group liability, so Gifford likewise was not deficient in not objecting to this non-existent instruction.[7]

Defendant argues that Gifford rendered ineffective assistance by failing to object to the jurisdictional element of 18 U.S.C. § 2118(a) and, likewise, for failing to request a jury instruction charging the jury to find defendant guilty of count one only if his actions "knowingly affected commerce." Dkt. # 62, at 29. The fourth element of the crime charged in count one, as provided in

---

[7]     Although defendant included the accomplice or group liability instruction with the instructions to which Gifford should have objected, he may have intended to argue instead that Gifford should have requested such an instruction. <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991) (requiring courts to consider <u>pro se</u> pleadings liberally). Even so, defendant's argument would fail. Although defendant was accused as one of four men involved in the robbery, he was not charged with conspiracy or any other crime requiring a group of individuals, nor was testimony from any other alleged participant in the robbery heard at trial. <u>See</u> Dkt. ## 2, 18, 38, 39. Thus, no instruction on accomplice or group liability was necessary. As no instruction was necessary, Gifford would not have been constitutionally deficient for failing to request such an instruction.

the Court's instruction, is that the jury must find beyond a reasonable doubt that "[t]he replacement cost of the controlled substance was not less than $500." Dkt. # 36, at 33. This element was drawn from the text of the statute, which states that an individual has committed an offense under § 2118(a) if all other elements are met and

> if (1) the replacement cost of the material or compound to the registrant was not less than $500, (2) the person who engaged in such taking or attempted such taking traveled in interstate or foreign commerce or used any facility in interstate or foreign commerce to facilitate such taking or attempt, or (3) another person was killed or suffered significant bodily injury as a result of such taking or attempt.

18 U.S.C. § 2118(a) (emphasis added). As the statute uses the word "or," the government is not required to prove each of the three jurisdictional conditions; proof of any one of the three conditions would suffice. See United States v. Kaylor, 877 F.2d 658, 661 (8th Cir. 1989) (concluding that an instruction including only the first jurisdictional condition "adequately covered the necessary elements of" § 2118(a)). In the superseding indictment, a grand jury charged defendant with "tak[ing] from the person and presence of another controlled substances, the replacement costs of the controlled substances to the registrant being $500 or more . . . ." Dkt. # 18, at 1. The government thus limited its theory of liability to the first of the three conditions, so it did not also need to prove the second condition. Cf. United States v. Hien Van Tieu, 279 F.3d 917, 921 (10th Cir. 2002) (stating that it would be an unconstitutional constructive amendment of the indictment for jury instructions to "broaden[] the basis for a defendant's conviction beyond acts charged in the indictment"). Thus, Gifford could not have been constitutionally deficient under Strickland for either failing to object to the instruction on the elements of § 2118(a) or failing to request an instruction that referenced the second jurisdictional condition. Defendant has failed to show that Gifford

rendered deficient performance as to the jury instructions, leaving the first <u>Strickland</u> prong unsatisfied.

### 7. Failure to Object to Adverse Judicial Rulings

Defendant next asserts that Gifford was ineffective because he "should have lodged various objections to the trial court's numerous rulings that were adverse to [defendant's] criminal proceedings." Dkt. # 62, at 29. Again, however, defendant fails to identify any specific rulings to which Gifford should have objected. As a result of defendant's failure to present more than conclusory allegations, without supporting factual averments, <u>see</u> <u>Fisher</u>, 38 F.3d at 1147, the Court cannot find either that Gifford's failure to object to unspecified rulings was unreasonably deficient or that any deficiency was prejudicial. <u>Id.</u> Thus, defendant has failed to satisfy either prong of <u>Strickland</u> as to this claim.

### 8. Failure to Preserve Conflict of Interest Issues

Defendant asserts that a conflict of interest existed between himself and Gifford, and the conflict had so deteriorated the attorney-client relationship that Gifford was no longer rendering effective assistance. Dkt. # 62, at 30. Defendant points to Gifford's failure to call defendant as a witness and his failure to file a motion to suppress evidence as the key issues that caused the deterioration in their relationship. <u>Id.</u>

The Sixth Amendment right to the assistance of counsel includes the "correlative right to representation that is free from conflicts of interest." <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981). Where a defendant makes no Sixth Amendment objection to a conflict at trial, this right is violated only where "an actual conflict of interest adversely affected his lawyer's performance." <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 350 (1980). Demonstrating an actual conflict of interest requires a defendant

to "point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party." United States v. Alvarez, 137 F.3d 1249, 1252 (10th Cir. 1998). However, if a defendant "cannot point to specific facts to substantiate his conflict of interest claim, he may attack his counsel's assistance through the 'general rule' of *Strickland*" rather than through the Sullivan actual conflict analysis. Green v. Snedeker, 355 F. App'x 146, 149 (10th Cir. 2009) (citing Mickens v. Taylor, 535 U.S. 162, 166 (2002)). Here, defendant fails to make any argument that Gifford's actions benefitted another party, making Strickland the appropriate analysis for this claim. Defendant's argument that Gifford failed to allow defendant to testify has been addressed and rejected above.

Defendant contends that Gifford was ineffective because he did not file a pretrial motion to suppress the physical evidence, as defendant had asked him. Dkt. # 62, at 30. Gifford contradicts defendant's statement, averring that defendant never requested that he file a pretrial motion. Dkt. # 77-2, at 2. More importantly, such a motion would have had no effect on defendant's case. The physical evidence admitted against defendant consisted of a sweatshirt and a pair of gloves found in a trash bin near where Greek's vehicle was located, as well as the face coverings--from which DNA was recovered--left in Greek's vehicle. Dkt. # 35-1; see also Dkt. # 38, at 92-93; Dkt. # 39, at 13-14. It is axiomatic that a criminal defendant must have standing to challenge the admission of evidence. See Rakas v. Illinois, 439 U.S. 128 (1978). Aside from certain exceptions not relevant here, standing requires a defendant to have a legitimate expectation of privacy in the area searched or property seized. Id. at 143. A criminal defendant has no reasonable expectation of privacy in either trash bins placed in public, California v. Greenwood, 486 U.S. 35, 40-41 (1988), or in a stolen vehicle. United States v. Worthon, 520 F.3d 1173, 1183 (10th Cir. 2008). Because defendant would

have lacked standing, no motion to suppress the gloves, jacket and face coverings would have been granted.

Although not specified in defendant's motion, defendant may have intended to argue that Gifford should have filed a motion to suppress relating to Special Agent Jones's seizure of his DNA. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (requiring courts to consider pro se pleadings liberally). Defendant has not provided grounds for such a motion, and no obvious grounds would prove successful here. Although the actual warrant was obtained in the Western District of Oklahoma, see Dkt. # 39, at 11, Special Agent Jones first applied for a warrant in this district. The Court has reviewed the sealed application for a warrant that Special Agent Jones submitted, and it recites that the TPD laboratory registered a presumptive match between the major contributor of the DNA on the face covering and defendant, whose DNA was in the laboratory's database. Based on the Court's review, no motion to suppress related to probable cause would prove successful. See United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2000) ("An affidavit in support of a search warrant must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity."); United States v. Rowland, 145 F.3d 1194, 1204 (10th Cir. 1998) (stating that "[r]eviewing courts should give the magistrate's ultimate probable cause decision 'great deference,'" unless the affidavit "does not provide 'a substantial basis for concluding that probable cause existed."). Special Agent Jones testified that he executed the warrant by swabbing the inside of defendant's cheek with a buccal swab, which he then sent to the TPD laboratory. Dkt. # 39, at 11-12. Absent further information, the Court can discern no basis for suppression based on the execution of the warrant. As defendant has failed to show prejudice based

on Gifford's decision not to file a motion to suppress, defendant's claim fails under <u>Strickland</u>. <u>See</u> <u>Strickland</u>, 466 U.S. at 694.

9. Failure to Convey a Plea Offer to Defendant

Defendant contends that Gifford failed to convey a plea offer and that, had he known of it, he would have accepted the offer. Dkt. # 62, at 31. Under <u>Missouri v. Frye</u>, 132 S. Ct. 1399, 1408 (2012), "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Accordingly, the failure to inform a criminal defendant of a plea offer may be ineffective assistance of counsel under <u>Strickland</u>. <u>See</u> <u>In re</u> <u>Graham</u>, 714 F.3d 1181, 1182 (10th Cir. 2013) (per curiam).

Again, however, the record belies defendant's allegations. Before the venire panel arrived, the Court had the following exchange with counsel and defendant on the record:

> THE COURT: . . . Oh, before the jury panel comes in, on the record, I want to make a record under <u>Frye</u> and <u>Lafler</u>. Were there any plea offers made to this defendant?
>
> MR. GIFFORD: No, Your Honor.
>
> THE COURT: You don't know?
>
> MR. FRIES: Well, I do, Your Honor. In that regard I believe at the time of the initial appearance the defendant was offered the proposition that if he wanted to come in, cooperate with the government, and conduct a Rule 11 with the government, that the United States would be willing to file some type of 5K motion, depending upon his cooperation.
>
> THE COURT: To whom was that communicated?
>
> MR. FRIES: I believe it was to counsel.
>
> MR. GIFFORD: I can tell you after the arraignment was over, I believe Ms. McCormick said something to the effect of the soon- -- the faster -- "If he wants to come in, the faster he does it, the better for him." I think that was --
>
> THE COURT: Okay. And did you talk to --

29

MR. GIFFORD: -- about the extent of our --

THE COURT: Yeah. And did you convey that to the defendant?

MR. GIFFORD: Yes, Your Honor.

THE COURT: And did you ask Mr. Hopkins if he wanted to go in and cooperate with the United States?

MR. GIFFORD: Oh, yes. Yes.

THE COURT: Okay. And Mr. Hopkins, you'll confirm that you made a decision not to do that; correct?

THE DEFENDANT: Yes, ma'am.

Dkt. # 38, at 11-12. Gifford states in his affidavit that he conveyed all plea offers to defendant, who rejected them. Dkt. # 77-2, at 2. Defendant's statement that he knew of the government's offer and decided not to accept it is a "[s]olemn declaration[] in open court [that] carr[ies] a strong presumption of verity." Blackledge, 431 U.S. at 74. Defendant's conclusory allegations, made without support in the record, are therefore "subject to summary dismissal." Id.

### 10. Failure to Challenge the Testimony of Special Agent Jones

Defendant expends great effort to argue that Gifford was ineffective for failing to object to the testimony of Special Agent Jones. Dkt. # 62, at 32. According to defendant, Special Agent Jones "testified in the capacity of an expert witness" without having been certified as an expert by the Court, making Gifford's failure to object a constitutional deficiency. On appeal, defendant made a similar argument, contending that this Court erroneously admitted Special Agent Jones's

identification testimony.[8] <u>United States v. Hopkins</u>, 528 F. App'x 782, 783 (10th Cir. 2013). Reviewing this Court's actions for plain error, the Tenth Circuit concluded that defendant failed to show any error that "prejudice[d] his substantial rights" in admitting Special Agent Jones's testimony. <u>Id.</u> (quoting <u>United States v. Mendiola</u>, 696 F.3d 1033, 1036 (10th Cir. 2012)). The appellate panel wrote: "Even if we assume the district court erred in admitting Agent Jones's identification testimony, Hopkins has not shown a reasonable probability that the result of his trial would have been different without that testimony." <u>Id.</u> at 784. The court emphasized the other evidence connecting defendant to the robbery, particularly the DNA evidence. <u>Id.</u> On that basis, the Tenth Circuit found that defendant had not shown plain error and affirmed his conviction. <u>Id.</u>

The second prong of the <u>Strickland</u> analysis requires defendant to show that his counsel's deficient performance was prejudicial to his case, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. The Tenth Circuit has noted that the prejudice prong of the federal plain error standard is "virtually identical" to the second prong of the <u>Strickland</u> analysis. <u>Williams v. Trammell</u>, 782 F.3d 1184, 1199 n.2 (10th Cir. 2015) (quoting <u>Close v. United States</u>, 679 F.3d 714, 720-21 (8th Cir. 2012)). In one unpublished case, a Tenth Circuit panel concluded that a previous panel's finding of prejudice on plain error review operated, under the law of the case doctrine, to satisfy the prejudice prong of <u>Strickland</u>. <u>United States v. Casteneda-Ulloa</u>, 100 F. App'x 757, 761-62 (10th Cir. 2004). The inverse could be found here, as the Tenth Circuit definitively concluded

---

[8]    On appeal, defendant challenged Special Agent Jones's testimony on the ground that, because the agent had no prior interactions with defendant, his testimony was unreliable. <u>Hopkins</u>, 528 F. App'x at 783. Here, defendant challenges the testimony on the basis that Gifford did not object to the Court allowing Special Agent Jones to testify as an expert. Dkt. # 62, at 32.

that defendant had not shown prejudice as a result of the admission of Special Agent Jones's testimony.

However, even absent the Tenth Circuit's conclusion on defendant's direct appeal, defendant has not shown that Gifford's failure to object to Special Agent Jones's testimony creates a "reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Defendant argues, citing United States v. Alvarez, 837 F.2d 1024, 1030 (11th Cir. 1988), that Special Agent Jones's testimony as an "expert" caused the jury to "become tainted and highly prejudicial toward [defendant]." Dkt. # 62, at 35. To this end, defendant believes a cautionary instruction should have been, but was not, given to the jury. While the Court did not require the jury to ignore Special Agent Jones entirely, as defendant seems to desire, it did instruct the jury on the evaluation of witness testimony generally, of expert witnesses, and of the credibility of law enforcement witnesses. Dkt. # 34, at 14-18. These instructions would have mitigated any prejudice against defendant resulting from Special Agent Jones's testimony. See Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions." (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987))). Moreover, defendant continues to ignore the other evidence introduced against him. Even had Special Agent Jones not been allowed to testify, the jury would still have considered, inter alia, the testimony of the two eyewitnesses to the robbery, the surveillance video showing the robbery, the testimony of the TPD officers who investigated the robbery, and the testimony of the expert witness who compared the DNA recovered from the face covering to defendant's DNA. See Dkt. ## 38, 39. Defendant has not shown "a reasonable probability" that, had Gifford objected to Special Agent Jones's testimony and the Court sustained that objection, the trial would have ended differently. Therefore, defendant has not shown that Gifford's failure to object

to Special Agent Jones's testimony was prejudicial and, as a result, Gifford's actions do not meet the second prong of <u>Strickland</u>.

<u>11. Failure to Object to the Admission of DNA Evidence or Retain a DNA Expert</u>

Defendant asserts three errors in Gifford's performance regarding the DNA evidence that, separately or together, rendered him ineffective: first, Gifford failed to object to, or to challenge through a motion to suppress, the evidence from which the DNA was recovered; second, Gifford failed to call a DNA expert to rebut the testimony of the government's witness; and third, Gifford failed to file a motion in limine challenging the admissibility of the DNA evidence "because of improper analysis or foundational improprieties." Dkt. # 62, at 38.

As to the first asserted error, that Gifford failed to object to or challenge the admission of the physical evidence from which DNA was recovered, defendant has not satisfied <u>Strickland</u>. As stated above, defendant lacked standing to challenge the physical evidence through a motion to suppress, so any decision not to file such a motion could not possibly have led to a different result in defendant's case. Similarly, it is not apparent on what ground counsel could have objected to the admission of the physical evidence at trial. Under the Federal Rules of Evidence, relevant evidence is admissible at trial, FED. R. EVID. 402, and evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FED. R. EVID. 401. DNA evidence found on a face covering worn by a robber would obviously be relevant. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. However, the probative value of the DNA evidence would not have been substantially outweighed

by one of the concerns listed in Rule 403, and so the evidence was admissible. Defendant provides no alternate basis for Gifford to have objected to the admission of the physical evidence, and none is apparent. See Dkt. # 62, at 37. Defendant has not established that Gifford's decision not to object to the admission of the evidence "fell below an objective standard of reasonableness" or that the result of the trial would have been different had Gifford objected, and so he has not satisfied either prong of Strickland as to this argument.

Defendant asserts that Gifford erred in failing to call a DNA expert to rebut the testimony of Wilson, the government's expert witness. "Whether to call a particular witness is a tactical decision and, thus, a 'matter of discretion' for trial counsel." United States v. Miller, 643 F.2d 713, 714 (10th Cir. 1981). The Tenth Circuit has on several occasions found that a defendant fails to demonstrate prejudice under Strickland where the contents of the potential witness's testimony are wholly speculative, because such a witness may have proved harmful rather than helpful. Boyle v. McKune, 544 F.3d 1132, 1138 (10th Cir. 2008) ("And the speculative witness is often a two-edged sword. For as easily as one can speculate about favorable testimony, one can also speculate about unfavorable testimony."); United States v. Snyder, 787 F.2d 1429, 1432 (10th Cir. 1986) (noting that, without information about how the witnesses would have testified, it is "at least as reasonable" to speculate that the testimony of uncalled witnesses would have harmed the defendant's case as helped it); see also Parker v. Scott, 394 F.3d 1302, 1322 (10th Cir. 2005) (finding counsel's decision not to call a witness reasonable where the witness could have corroborated detrimental evidence); Cannon v. Mullin, 383 F.3d 1152, 1165 (10th Cir. 2004) (noting that counsel was not ineffective for failing to call expert medical witnesses where it was not apparent that their testimony would be helpful). Here, defendant does not--indeed, cannot--provide more than speculation that an

independent DNA expert would have aided his defense. See Dkt. # 62, at 37. It is equally, if not

more, likely that an independent expert would have confirmed Wilson's findings, making the DNA

evidence even more damning. In his affidavit, Gifford states that he "reviewed the extensive DNA

evidence that was ultimately offered at trial," but he "could not find any reason to suspect that it was

improperly obtained or improperly tested." Dkt. # 77-2, at 2. Thus, Gifford clearly considered the

DNA evidence and, by extension, whether or not to challenge that evidence. With nothing more than

speculation, the Court cannot find that Gifford's decision not to call an independent DNA expert was

prejudicial to defendant's case. See Strickland, 466 U.S. at 694.

In his third asserted error related to the DNA evidence, defendant argues that Gifford was

constitutionally ineffective because he did not file a motion in limine or other motion to exclude the

DNA evidence for "improper analysis or foundational improprieties." Dkt. # 62, at 38. A motion in

limine is a "pretrial request that certain inadmissible evidence not be referred to or offered at trial."

BLACK'S LAW DICTIONARY (10th ed. 2014). As discussed above, defendant has given no reason why

the DNA evidence would have been inadmissible, making any failure to file a motion in limine non-

prejudicial. The expert witness was questioned extensively about his own training in DNA analysis,

the operations and certifications of the laboratory, DNA testing generally, the methods used to test

for DNA in this case. Dkt. # 39, at 22-29. Thus, a proper foundation for the DNA evidence was laid.

Defendant also argues that Gifford had a duty to file a motion in limine "to 'demand a valid

scientific connection to the pertinent inquiry as a precondition to admissibility.'" Id. Although not

cited, this language comes from Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591-

92 (1993). Under Daubert, the trial court must consider whether the evidence offered by an expert

witness is scientifically valid and whether it will be helpful to the jury. Id. at 589-92; see also

Bradley v. Prop. & Cas. IC of Hartford, No. 02-CV-0660-EA (M), 2003 WL 26089950, at *1 (N.D. Okla. April 21, 2003). The results of the DNA analysis would certainly help the jury, leaving only the question of scientific validity. Defendant has given no reason to believe that, contrary to Wilson's testimony, the DNA analysis was not scientifically valid either in methodology or execution. Defendant therefore has not shown that any prejudice resulted from Gifford's decision not to seek a Daubert hearing regarding Wilson's testimony, and so defendant's claim fails the second prong of the Strickland analysis.

As defendant has failed to satisfy Strickland with each argument, Gifford's performance relating to the DNA evidence was not constitutionally ineffective.

### 12. Failure to Object to the Government's Proof Regarding Interstate Commerce

Defendant argues that Gifford was ineffective because Gifford did not object to the "insufficient evidence to meet the requirements and affect [sic] on interstate commerce as established in the United States Constitution." Dkt. # 62, at 39. As described above, the statute contains three jurisdictional conditions, only one of which must be satisfied. See 18 U.S.C. § 2118(a). The superseding indictment charged, and the jury was instructed on, the first of these three conditions, that "the replacement cost of the material or compound to the registrant was not less than $500." Dkt. # 18, at 1; Dkt. # 34, at 33. Greek testified that the value of the drugs stolen in the robbery was approximately $4,200. Dkt. # 38, at 102. Thus, there was no error in the evidence as to the jurisdictional element, and so Gifford's non-objection was neither deficient performance nor prejudicial to defendant's case under Strickland.

### 13. Failure to Present a Complete Defense

In his final ineffective assistance of counsel claim, defendant asserts that Gifford's errors--specifically, his "failure to advise of right to testify and counsel's preclusion from testifying"--denied defendant the right to present a complete defense. Dkt. # 62, at 39. However, as detailed above, the evidence does not show that Gifford denied defendant the right to testify; instead, the evidence, and in particular defendant's colloquy with the Court during trial, see Dkt. # 39, at 61-62, supports Gifford's position that defendant affirmatively chose not to testify. Defendant cites United States v. Moussaoui, 365 F.3d 292, 307 (4th Cir. 2003), wherein the Fourth Circuit addressed the ability of the defendant, charged as one of the terrorists involved in the September 11, 2001 attacks, to access and depose witnesses. The Court sees no connection between Moussaoui and defendant's case, as defendant does not claim that he lacked access to any potential witness. As to defendant's ability to present a complete defense, defendant has failed to overcome the "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Strickland, 466 U.S. at 688. Thus, defendant has failed to satisfy the first prong of the Strickland analysis.

### IV.

In his second ground for relief, defendant asserts that he is entitled to relief because he is "serving a period of incarceration for a crime he is actually innocent of commiting [sic]." Dkt. # 62, at 40. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). To establish actual innocence, defendant "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the . . . evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare."

McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). On review, courts are "not bound by the rules of admissibility that would govern at trial," allowing them to consider not only the evidence admitted but also "the probative force of relevant evidence that was either excluded or unavailable at trial." Schlup, 513 U.S. at 327-28.

Under these standards, defendant's actual innocence claim cannot succeed. Defendant argues that he "had a credibile [sic] alibi defense that was not reasonably and properly presented by a counsel who gave deficient trial performance." Dkt. # 62, at 40. However, defendant's claim of actual innocence must be based on what the evidence shows, not on counsel's ability to present that evidence. See Schlup, 513 U.S. at 327. As demonstrated by the verdict, twelve jurors found the evidence presented at trial to be sufficient to convict defendant. Dkt. # 36. The Court reaches the same conclusion now: based on the testimony of the witnesses, the surveillance video, the physical evidence, and the DNA evidence, defendant has not shown "that it is more likely that not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Thus, defendant has not shown actual innocence, and he is not entitled to relief.

**V.**

Defendant's fourth ground for relief is that he was denied a fair trial, in violation of the Fifth Amendment, because the prosecution failed to disclose evidence under Brady v. Maryland, 373 U.S. 83 (1963). "A *Brady* violation occurs when the government suppresses evidence which is both favorable and material to the defense." United States v. Espinoza, 545 F. App'x 783, 785 (10th Cir. 2013) (citing Brady, 373 U.S. at 87). "A *Brady* violation has three essential elements: '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently;

and prejudice must have ensued.'" <u>Douglas v. Workman</u>, 560 F.3d 1156, 1173 (10th Cir. 2009) (quoting <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004)). Defendant states that he "is initiating [a] Freedom of Information Act request which will reveal that the prosecution failed to disclose evidence that was favorable to [defendant's] criminal defense at trial." Dkt. # 62, at 43. According to defendant, he will supplement this claim when his request is fulfilled. <u>Id.</u> To date, defendant has provided the Court with no information about what evidence, if any, was withheld from defendant or his counsel. Thus, defendant has not shown that any evidence was in fact suppressed. Defendant's <u>Brady</u> claim fails, and he is not entitled to relief on that basis.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 62) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that defendant's motion for production of records/transcripts (Dkt. # 63) is **denied**.

**DATED** this 17th day of June, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE